USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 8/13/2024

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KAREN C. HAN,

Plaintiff,

-against-

FINANCIAL SUPERVISORY SERVICE *a South Korean Corporation without capital*,

Defendant.

1:23-cv-5451-MKV

**ORDER DENYING MOTION TO DISMISS WITHOUT PREJUDICE**

MARY KAY VYSKOCIL, United States District Judge:

This diversity action is one in a series of lawsuits, dating back more than twenty years, filed by Plaintiff Karen C. Han ("Plaintiff") in connection with a contractual relationship involving Plaintiff's now-defunct financial services company Peninsula Asset Management (Cayman) Ltd. ("Peninsula") and Hankook Tire Company, Ltd. ("Hankook"), its controlling shareholder Yang-Rae Cho ("Mr. Cho"), and Hyun-Bum Cho, Mr. Cho's son (collectively, the "Hankook Parties"). Here, Plaintiff once again sues the Financial Supervisory Service ("FSS" or "Defendant"), a corporation established under the laws of the Republic of Korea ("South Korea"), alleging that FSS tortiously interfered in the contractual relationship between Peninsula and Hankook, committed a *prima facie* tort under New York law, and committed intentional infliction of emotional distress against Plaintiff and her family.

FSS has filed a motion under Federal Rules of Civil Procedure 12(b)(1), (2), and (6) to dismiss the Complaint on various grounds. For the following reasons, Defendant's motion, while potentially meritorious, is DENIED *without* prejudice.

**BRIEF BACKGROUND**[1]

This action is the latest chapter in a lengthy dispute between Plaintiff Han, non-party Hankook, and Defendant FSS. *See Peninsula Asset Mgmt. (Cayman) Ltd. v. Yang-Rai Cho*, No.153-195438-02, 2006 WL 3255668 (Tex. Dist. Feb. 24, 2006) ("*Peninsula I*"); *Peninsula Asset Mgmt. (Cayman), Ltd. v. Hankook Tire Co.*, No. 5:04-cv-1153, 2008 WL 302370 (N.D. Ohio Feb. 1, 2008) ("*Peninsula II*"); *Peninsula Asset Mgmt. (Cayman) Ltd. v. Hankook Tire Co.*, No. 5:04-cv-1153, 2005 WL 3046284 (S.D.N.Y. Nov. 10, 2005) ("*Peninsula III*"), *aff'd by Peninsula Asset Mgmt. (Cayman) Ltd. v. Hankook Tire Co.*, 476 F.3d 140 (2d Cir. 2007) ("*Peninsula IV*"); *Han v. Fin. Supervisory Serv.*, No. 17-cv-4383, 2017 WL 7689223, at *3 (S.D.N.Y. Oct. 6, 2017) ("*SDNY R&R*"), *report and recommendation adopted*, No. 17-cv-4383, 2018 WL 791353 (S.D.N.Y. Feb. 8, 2018) ("*FSS I*"); *Han v. Hankook Tire Co.*, 799 F. App'x 347 (6th Cir. 2020) ("*Han I*"); *Han v. Fin. Supervisory Serv.*, No. 18-cv-00141, 2019 WL 13253806 (D.D.C. Sept. 9, 2019) ("*DC R&R*"), *report and recommendation adopted in part*, *Han v. Fin. Supervisory Serv.*, No. cv 18-141, 2022 WL 2438513 (D.D.C. July 5, 2022) ("*FSS II*"); *Han v. Cho*, 804 F. App'x 864 (9th Cir. 2020) ("*Han II*").[2]

Plaintiff alleges that FSS is "a civil corporation without capital which operates as a 'buffer' between South Korean financial institutions and South Korea's governmental agency (equivalent to the U.S. SEC)." Compl. ¶¶ 1–3. In brief, Plaintiff alleges that in the early 2000s, FSS

[1] The facts are primarily taken from the Complaint [ECF No. 1] ("Compl."), and for purposes of this motion, are accepted as true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[2] When considering a motion to dismiss pursuant to Rule 12(b)(1), the Court may resolve disputed jurisdictional fact issues by referring to evidence outside of the pleadings. *See Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000). In doing so, a district court may properly consider public records that may be judicially noticed in ruling on these motions. *Williams v. New York City Hous. Auth.*, 816 F. App'x 532, 534 (2d Cir. 2020). In particular, a district court may "take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." *Glob. Network Commc'ns, Inc. v. City of N.Y.*, 458 F.3d 150, 157 (2d Cir. 2006) (internal quotation marks and citation omitted).

investigated the offshore financial activities of the Hankook Parties and found that certain activities were in violation of various laws and regulations of South Korea. Compl. ¶ 3. Plaintiff alleges that nevertheless, FSS worked with the Hankook Parties to "conceal its finding of these violations" to "trigger [an] Indemnity Agreement in order to obstruct Plaintiff's proof of her claim against [the Hankook Parties] in legal proceedings." Compl. ¶ 3.

FSS first became involved in this series of lawsuits in March 2005 when Plaintiff served a subpoena on FSS requesting that it produce documents related to its investigation into the Hankook Parties. Compl. ¶ 53. When FSS refused to comply with the subpoena, Plaintiff, acting through her company Peninsula, filed a motion for contempt in the Southern District of New York. *See Peninsula III*, 2005 WL 3046284. The court denied that motion on the ground that FSS had adequately shown that the Act on Establishment of Financial Supervisory Organizations prevented its compliance with the subpoena. *Id.* at *4. Relevant here, on appeal, the Second Circuit affirmed the district court's denial of the contempt motion on the grounds that FSS was entitled to foreign sovereign immunity. *Peninsula IV*, 476 F.3d at 143–44 (finding that FSS provided sufficient evidence to satisfy four out of five factors listed in *Filler v. Hanvit Bank,* 378 F.3d 213 (2d Cir. 2004), "thereby establishing a *prima facie* case for foreign sovereign immunity").

Plaintiff alleges that on January 29, 2009, about two years after the Second Circuit decision in *Peninsula IV* finding that FSS was entitled to sovereign immunity, the South Korean government, acting through the South Korean Ministry of Finance and Economy ("MOFAE"), announced its decision "to release FSS from the designation of 'public institution' to secure autonomy and independence of FSS and financial institutions from the government." Compl. ¶ 71. Once again, in June 2017, Plaintiff brought a direct action against FSS in the Southern District of New York seeking a declaratory judgment that FSS was no longer entitled to

sovereign immunity in order to prevent a potential discovery dispute and so that Plaintiff could resume her breach of contract action against Hankook. *See FSS I*, 2018 WL 791353, at *4–5. The court did not, however, reach the issue of foreign sovereign immunity, instead dismissing the action on the ground that Plaintiff's action "prematurely ask[ed] th[e] Court to make a determination about unripe issues." *Id.* at *7.

Less than a year later, in January 2018, Plaintiff once again brought suit against FSS, this time in the United States District Court for the District of Columbia, asserting claims almost identical to the ones now before this Court. *See FSS II*, 2022 WL 2438513. In the District of Columbia action, Magistrate Judge Harvey issued a report and recommendation ("R&R"), finding, *inter alia*, that four of the *Filler* factors weighed in favor of finding foreign sovereign immunity and thus recommending the district court dismiss the case based on lack of subject matter jurisdiction on the ground that FSS is immune from suit pursuant to the FSIA. *See DC R&R*, 2019 WL 13253806, at *20*, report and recommendation adopted in part by FSS II*, 2022 WL 2438513. Despite finding that the alleged "2009 passage of the Management Act altered the legal context such that the [Second Circuit's] prior determination in *[Peninsula IV]* should not be deemed 'conclusive' on the issue" of foreign sovereign immunity, Magistrate Judge Harvey found that FSS still is entitled to such immunity. *DC R&R*, 2019 WL 13253806, at *14.

Notwithstanding the R&R's analysis of foreign sovereign immunity, the district court adopted only the section of the R&R which analyzed personal jurisdiction and accordingly granted FSS's motion to dismiss because Plaintiff had not established an injury and that even if such an injury did exist, Plaintiff failed to establish that such injury had any connection to the District of Columbia forum. *FSS II*, 2022 WL 2438513, at *9. In so finding that it lacked personal

jurisdiction over FSS, the District Court of Columbia did not ultimately reach FSS's remaining arguments, including the issue of foreign sovereign immunity. *Id.*

In the latest chapter of this saga, Plaintiff now brings suit against FSS for the third time, alleging claims for (1) tortious interference in the contractual relationship between Peninsula and Hankook, (2) *prima facie* tort as an "alternative claim" for tortious interference, and (3) intentional infliction of emotional distress. Compl. ¶¶ 89–101. FSS has filed a motion to dismiss under Federal Rules of Civil Procedure 12(b)(1), (2), and (6) on the following grounds: (1) insufficient service of process and therefore lack of personal jurisdiction; (2) lack of subject matter jurisdiction because FSS is entitled to foreign sovereign immunity; (3) lack of standing; (4) Plaintiff's claims are barred by statute of limitations; and (5) the cause of action for IIED fails to state a claim for relief. *See* [ECF No. 8] ("Def. Motion") at 1; [ECF No. 27] ("Def. Reply"). Plaintiff opposes the motion. *See* [ECF No. 24] ("Pl. Opp.").

## **LEGAL STANDARD**

In general, the Court is obligated to construe a *pro se* complaint liberally and interpret it to raise the "strongest arguments that it suggests." *Costabile v. New York City Health & Hosps. Corp.*, 951 F.3d 77, 80 (2d Cir. 2020). Still, federal courts are "courts of limited jurisdiction." *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005). "A case is properly dismissed for lack of subject matter jurisdiction under [Federal Rule of Civil Procedure] 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000); Fed. R. Civ. P. 12(b)(1).

"When considering a motion to dismiss pursuant to Rule 12(b)[], the court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff." *Sweet v. Sheahan*, 235 F.3d 80, 83 (2d Cir. 2000); *see also Nat. Res. Def. Council v. Johnson*, 461

F.3d 164, 171 (2d Cir. 2006). The Court may resolve disputed jurisdictional fact issues, however, "by referring to evidence outside of the pleadings, such as affidavits, and if necessary, hold an evidentiary hearing." *Karlen ex rel. J.K. v. Westport Bd. of Educ.*, 638 F. Supp. 2d 293, 298 (D. Conn. 2009) (citing *Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000)). In doing so, a district court may properly consider public records that may be judicially noticed in ruling on these motions. *Williams v. New York City Hous. Auth.*, 816 F. App'x 532, 534 (2d Cir. 2020). In particular, a district court may "take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." *Glob. Network Commc'ns, Inc. v. City of N.Y.*, 458 F.3d 150, 157 (2d Cir. 2006) (internal quotation marks and citation omitted).

## DISCUSSION

### I. The Second Circuit's *Peninsula IV* is Not Dispositive.

One of the arguments Defendant makes under Fed. R. Civ. P. 12(b)(1) in support of its motion to dismiss is that it is entitled to foreign sovereign immunity. In 2007, in *Peninsula IV*, the Second Circuit held that Defendant FSS *was* entitled to sovereign immunity. *Peninsula IV*, 476 F.3d at 143–44. In so finding, the Second Circuit determined that FSS had "provided sufficient evidence to satisfy" four of the five factors delineated *Filler v. Hanvit Bank*, 378 F.3d 213, 216 (2d Cir. 2004) "to determine whether an entity is a government 'organ' " and thus entitled to foreign sovereign immunity. *Id*. *Filler* instructs courts considering whether an entity is an organ to a foreign government to ask:

> (1) whether the foreign state created the entity for a national purpose; (2) whether the foreign state actively supervises the entity; (3) whether the foreign state requires the hiring of public employees and pays their salaries; (4) whether the entity holds exclusive rights to some right in the [foreign] country; and (5) how the entity is treated under foreign state law.

*Peninsula IV*, 476 F.3d at 143 (alteration in original) (quoting *Filler*, 378 F.3d at 217). Assessing those factors in *Peninsula IV*, the Second Circuit found:

> *First*, Korea created FSS for the national purpose of examining, supervising, and investigating Korean financial institutions. *Second*, the Korean government actively supervises FSS by, *inter alia*: (1) appointing its governor and auditor; (2) acting through a related agency, FSC; and (3) regulating the inspection fees that FSS can collect. *Third*, FSS has the exclusive right to receive monthly business reports from the solvent financial institutions it oversees. *Finally*, the Korean government informed the State Department and the district court that it treats FSS as a government entity.

*Id*. Accordingly, the Second Circuit found that FSS had "establish[ed] a *prima facie* case for foreign sovereign immunity." *Id*. Normally such a holding would be dispositive of the very same foreign sovereign immunity question now before the Court.

However, Plaintiff now alleges in her Complaint that on January 29, 2009—approximately two years after *Peninsula IV* was decided—the South Korean government, acting through the South Korean Ministry of Finance and Economy ("MOFAE"), announced its decision "to release FSS from the designation of 'public institution' to secure autonomy and independence of FSS and financial institutions from the government." Compl. ¶ 71. Plaintiff further alleges that this policy decision "transformed FSS from a civil public corporation, which might have caused some confusion in the legal status of FSS, into a pure civil corporation that maintains complete independence from the government or its agencies." Compl. ¶ 71. Taken in the light most favorable to Plaintiff, as the Court must at this stage, these allegations, if true, indicate that the Second Circuit's findings in *Peninsula IV* that FSS is actively supervised by the Korean government and that the Korean government treats it as a government entity—two major pillars of the Circuit's ultimate finding that FSS was an organ of the government—are no longer factually the case.

As such, Plaintiff's complaint has sufficiently alleged that the 2009 MOFAE policy decision altered the factual and legal context such that the Second Circuit's prior determination in *Peninsula IV* should not be deemed "conclusive" on the issue of FSS's status here. *See Comm'r v. Sunnen*, 333 U.S. 591, 600 (1948) (holding that "where the situation is vitally altered between the time of the first judgment and the second, the prior determination is not conclusive."); *New Hampshire v. Maine*, 532 U.S. 742, 744 (2001) (noting "a change in public policy" or "a change in facts essential to the prior judgment" may render the prior determination not dispositive); *see also Montana v. United States*, 440 U.S. 147, 148 (1979). Indeed, Defendant FSS does not attempt to argue that Peninsula IV has preclusive effect in this case.

## II. The Court Cannot Rule on Defendant's Motion to Dismiss in Its Current, Incomplete State.

Under normal circumstances, the Court would now turn to the arguments raised in Defendant's motion papers. However, Defendant's moving brief and proffered factual records in support of its motion to dismiss are, quite plainly, both thin and limited. Defendant spends almost eleven of its eighteen-page brief describing to the Court—in detail—the series of prior lawsuits (dating back more than twenty years) filed by Plaintiff in connection with this matter. But when it actually comes to Defendant's legal arguments, the brief is scant. For example, Defendant lends a total of four sentences to one of its seemingly stronger arguments in favor of foreign sovereign immunity. Def. Motion at 14. Excluding citations to previous cases involving Plaintiff, Defendant cites a total of *five* cases spanning across its *five* separate grounds for dismissal.

Overall, instead of providing factual records or developing its legal arguments, Defendant points the Court towards previous cases related to this matter. Specifically, Defendant attaches nine cases as exhibits, in which Plaintiff brought suit predicated on the same facts and legal theories now at issue. But on a motion to dismiss, a district court may only "take judicial notice

of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings."[3] *Glob. Network Commc'ns, Inc. v. City of N.Y.*, 458 F.3d 150, 157 (2d Cir. 2006) (internal quotation marks and citation omitted). In other words, the Court simply cannot rely solely on non-binding rulings in other cases to decide Defendant's motion, especially where here, Defendant appears to be directing the Court to the *reasoning* contained *in* those cases. For instance, in support of its foreign sovereign immunity argument, Defendant cites to the R&R issued by Magistrate Judge Harvey in the District of Columbia. *See* Def. Motion at 14 (citing *DC R&R*, 2019 WL 13253806). First, as previously noted, the district court did not ultimately adopt the portion of the R&R regarding foreign sovereign immunity, instead dismissing on personal jurisdiction grounds. *FSS II*, 2022 WL 2438513, at *9. Second, a review of the R&R demonstrates that Defendant FSS had provided that district court with multiple affidavits and exhibits in support of its foreign sovereign immunity argument. *DC R&R*, 2019 WL 13253806, *17–18; *see also SDNY R&R*, 2017 WL 7689223, at *3 (stating that on July 17, 2017, FSS filed its motion to dismiss on jurisdictional grounds "supported . . . with evidence, including five affidavits and numerous exhibits, most of them going to the issue of foreign sovereign immunity"). Here, the only two affidavits Defendant submits with its motion speak almost exclusively to whether service was made properly in this case—a ground which would only result, at best for Defendant, in a dismissal *without* prejudice. [ECF Nos. 8-1, 8-2, 8-5–11, 8-13–14]. Yet, Defendant not only requests dismissal *with* prejudice in its

[3] This scenario most often arises in the case where a defendant, is attempting to argue a *res judicata* defense and wants judicial notice of a state court decision or petition. *See e.g.*, *Williams v. New York City Hous. Auth.*, 816 F. App'x 532, 534 (2d Cir. 2020). However, Defendant FSS makes no claim preclusion or issue preclusion arguments in its motion, and therefore, the Court does not *sua sponte* analyze those issues. *United States v. Sineneng-Smith*, 590 U.S. 371, 375 (2020) ("in both civil and criminal cases, in the first instance and on appeal . . ., we rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present.").

motion, but also asks the Court to take extreme action and enjoin Plaintiff from ever suing Defendant again. Def. Motion at 17–18.

In light of Plaintiff's unsuccessful, litigious twenty-year history, however, Defendant FSS's motion to dismiss appears, on the limited factual record currently before the Court, as though it may be meritorious. The Court understands that this is the third time FSS has had to defend itself against Plaintiff in various courts across the country and acknowledges the time and resources likely expended in doing so. Nonetheless, the Court is especially reluctant to consider Defendant's motion to dismiss in its current state given Plaintiff's *pro se* status.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss Plaintiff's Complaint is DENIED *without* prejudice of renewal. Defendant shall file any renewed motion to dismiss no later than September 6, 2024. In the event Defendant files a new motion to dismiss, the briefing for that motion will be on the schedule set forth in Local Rule 6.1(b). The Clerk of Court is respectfully requested to terminate docket entry 18.

**SO ORDERED.**

**Date: August 13, 2024**
**New York, NY**

**MARY KAY VYSKOCIL**
**United States District Judge**