USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 2/24/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KAREN C. HAN,

                    Plaintiff,

        -against-

FINANCIAL SUPERVISORY SERVICE *a
South Korean Corporation without capital;*

HANKOOK TIRE & TECHNOLOGY CO.,
LTD., *a South Korean Corporation*,

                    Defendants.

1:23-cv-5451-MKV

**ORDER GRANTNG
MOTIONS TO DISMISS**

MARY KAY VYSKOCIL, United States District Judge:

Plaintiff, proceeding *pro se*, initiated this action by filing a complaint against Financial Supervisory Service ("FSS") on June 27, 2023.  [ECF No. 1].  The Court denied FSS's initial motion to dismiss that complaint, [ECF No. 18], because the moving papers were "thin and limited" to a degree that rendered disposition imprudent.  [ECF No. 33] at 8.  FSS renewed its motion shortly thereafter.  [ECF No. 36].  After opposing the renewed motion, [ECF Nos. 37, 43], Plaintiff requested leave to amend her complaint.  [ECF No.  48].  The Court granted leave to amend and denied the then-pending motion to dismiss as moot.  [ECF No. 50].  Plaintiff filed an amended complaint adding new claims and an additional defendant, Hankook Tire and Technology Co., Ltd. ("Hankook").  [ECF No. 51] (the "Amended Complaint" or "Compl.").  The Amended Complaint alleges claims against both Defendants under the RICO statute, and against FSS under state law.  *Id.*

Before the Court are Defendants' motions to dismiss.  [ECF Nos. 61, 72].  Defendant FSS moves under Rules 12(b)(1), (2), (5), and (6) to dismiss Plaintiff's claims, arguing that FSS enjoys sovereign immunity, Plaintiff lacks standing, Plaintiff's claims are time-barred, Plaintiff has not

pled necessary elements of her claims, and FSS has not been properly served.[1]  [ECF No. 61]; FSS

MTD.  FSS also moves under the All Writs Act to bar Plaintiff "from ever again suing FSS on the

claims alleged in the amended complaint."[2]  FSS MTD at 29 (cleaned up).  Defendant Hankook

moves under Rules 12(b)(1) and 12(b)(6) to dismiss Plaintiff's claims, arguing that they are barred

by *res judicata*, Plaintiff does not have standing to bring them, they are time-barred, and in any

event Plaintiff has failed to state a claim.  [ECF No. 72].

## BACKGROUND

"This case with a long and tortured procedural history presents a prolonged strife among

the parties in this action."  Compl. ¶ 3;  *see, e.g*, *Peninsula Asset Mgmt. (Cayman) Ltd. v. Yang-*

*Rai Cho*, No. 153-195438-02 (Tex. Dist. Ct. Tarrant Cnty., Oct. 8, 2002) ("*Peninsula I*");

*Peninsula Asset Mgmt. (Cayman), Ltd. v. Hankook Tire Co.*, No. 5:04-cv-1153 (N.D. Ohio June

17, 2004) ("*Peninsula II*"); *Peninsula Asset Mgmt. (Cayman) Ltd. v. Hankook Tire Co.*, No. M8–

85 (HB), 5:04-cv-1153, 2005 WL 3046284 (S.D.N.Y. Apr. 14, 2005) ("*Peninsula III*"), *aff'd by*

*Peninsula Asset Mgmt. (Cayman) Ltd. v. Hankook Tire Co.*, 476 F.3d 140 (2d Cir. 2007)

("*Peninsula IV*"); *Han v. Fin. Supervisory Serv.*, No. 17-CV-4383 (GBD) (BCM), 2017 WL

7689223, (S.D.N.Y. Oct. 6, 2017) ("*SDNY R&R*"), *report and recommendation adopted*, No17-

CV-4383 (GBD) (BCM), 2018 WL 791353 (S.D.N.Y. Feb. 8, 2018) ("*FSS I*"); *Han v. Hankook*

*Tire Co.*, 799 F. App'x 347 (6th Cir. 2020) ("*Han I*"); *Han v. Fin. Supervisory Serv.*, No. 1:18-cv-

141 (EGS/GMH), 2019 WL 13253806 (D.D.C. Sept. 9, 2019) ("*DC R&R*"), *report and*

*recommendation adopted in part*, No. 1:18-cv-141 (EGS/GMH), 2022 WL 2438513 (D.D.C. July

---

[1] The 12(b)(2) and 12(b)(5) motions both appear to be based on lack of service.  *See* [ECF No. 61-15] (the "FSS MTD") at 28.

[2] FSS cites virtually no authority in support of this rather drastic request.  While the Court, for reasons that will become clear over the course of this Opinion, is sympathetic to FSS's desire for finality, the Court declines in its exercise of discretion to grant the relief sought on the current record.

5, 2022) ("*FSS II*"); *Han v. Cho*, 804 F. App'x 864 (9th Cir. 2020) ("*Han II*").

"The genesis of Plaintiff's claim" dates back to "the 1990s." Compl. ¶ 19. Plaintiff, her husband, and their financial services entity, Peninsula Asset Management (Cayman) Ltd. ("Peninsula"), allegedly were "fraudulently induced by Hankook to perform certain services to implement an illegal scheme involving money laundering and insider stock trading." *Id.* Before providing these services, Plaintiff had "entered into a contract with Hankook . . . that contained an indemnity clause" (the "Indemnity Agreement"). Compl. ¶ 4.

In the background, Plaintiff alleges, Hankook and FSS—"a 'buffer' between South Korean financial institutions and South Korea's governmental agency (equivalent to the U.S. SEC)," Compl. ¶ 5—entered into the alleged conspiracy that is at the heart of this case. Compl. ¶ 47. Specifically, in late 1999, FSS investigated but ultimately "covered up" stock price manipulation carried out by Hankook. *Id.* Thereafter, and through 2008, FSS took actions against Plaintiff and her husband "indicat[ing an] extreme level of animosity" in retaliation for certain investigative activities. Compl. ¶ 49-51.

In 2002, once it became aware of the legal risk to which Hankook had exposed it, Peninsula sent Hankook a demand letter commencing negotiations regarding indemnification under the Indemnity Agreement. Compl. ¶¶ 32-34. Dissatisfied with the offer of indemnification extended by Hankook, Plaintiff and her husband dissolved Peninsula. *Id.* The same year, Plaintiff, proceeding with Peninsula, sued Hankook and related parties (the "Hankook Parties") in Texas. *See Peninsula I.* That action was dismissed, at least as to Hankook, for lack of personal jurisdiction.[3] Compl. ¶ 53. Thereafter, Plaintiff sued on similar claims in

---

[3] Plaintiff continued to litigate questions surrounding the dismissal of Hankook for lack of personal jurisdiction in the Texas courts. *See Peninsula Asset Mgmt. (Cayman) Ltd. v. Hankook Tire Co.*, No. 2-04-254-CV, 2006 WL 1030185, at *1 (Tex. App. Apr. 20, 2006) (noting that "[t]he trial court made extensive findings of fact and conclusions of law, negating all bases for personal jurisdiction over Hankook in Texas."). Incidentally, in addition to the lawsuits already

Ohio. *See Peninsula II.*

In March 2005, Plaintiff served a subpoena on FSS requesting that it produce documents related to its investigation into the Hankook Parties. Compl. ¶ 57. When FSS refused to comply with the subpoena, Plaintiff, acting through her company Peninsula, filed a motion for contempt in the Southern District of New York, which the court denied on the ground that FSS had adequately shown that the Act on Establishment of Financial Supervisory Organizations prevented its compliance with the subpoena. *Peninsula III*, 2005 WL 3046284, at *2. Plaintiff alleges that, in connection with that decision, the court "heavily relied on two letters from the South Korean Embassy" that Plaintiff contends were issued unlawfully and at the direction of FSS. Compl. ¶¶ 64–66. Plaintiff alleges that the Second Circuit, in affirming the District Court on the alternative ground of foreign sovereign immunity, *see Peninsula IV*, 476 F.3d 140, likewise relied on these letters. Compl. ¶ 70. According to Plaintiff, without the discovery sought from FSS, she was unable to litigate her claims against the Hankook Parties in *Peninsula II*. Those claims were twice dismissed. *See Peninsula II*, 2008 WL 302370.

Plaintiff alleges that on January 29, 2009, about two years after the Second Circuit decision in *Peninsula IV* finding that FSS was entitled to sovereign immunity, the South Korean government, acting through the South Korean Ministry of Finance and Economy ("MOFAE"), announced its decision "to release FSS from the designation of 'public institution' to secure autonomy and independence of FSS and financial institutions from the government." Compl. ¶ 75. Since that time, Plaintiff and her husband "have continuously urged FSS and other relevant South Korean authorities such as" the Ministry of Foreign Affairs and Trade of South Korea ("MOFAT") and the Financial Supervisory Commission of South Korea ("FSC") "to rectify

---

described above, Plaintiff had at the time also apparently commenced related litigations in Malaysia and Korea. *See Peninsula II*, [ECF No. 26] at 10 n.4.

FSS's legal status . . . so that Plaintiff [could] resume her action against Hankook." Compl. ¶ 78. The relevant authorities have not "complied" due to "subtle, yet unmistakable political reasons." *Id.*

In parallel, in June 2017, to prevent a potential discovery dispute and so that Plaintiff could resume her breach of contract action against Hankook, Plaintiff brought another direct action against FSS in the Southern District of New York seeking a declaratory judgment that FSS was no longer entitled to sovereign immunity. *See FSS I.* Plaintiff alleges that FSS submitted another invalid document in support of its claims to foreign sovereign immunity in the *FSS I* litigation. Compl. ¶ 83. The court did not, however, reach the issue of foreign sovereign immunity, instead dismissing the action on the ground that Plaintiff's action "prematurely ask[ed] th[e] Court to make a determination about unripe issues." *FSS I*, 2018 WL 791353, at *3.

Less than a year later, in January 2018, Plaintiff once again brought suit against FSS, this time in the United States District Court for the District of Columbia, asserting claims almost identical to the ones now before this Court. *See FSS II.* In the District of Columbia action, Magistrate Judge Harvey issued a report and recommendation finding, *inter alia*, that four of the five *Filler v. Hanvit Bank*, 378 F.3d 213 (2d Cir. 2004), factors weighed in favor of finding foreign sovereign immunity and thus recommending the district court dismiss the case based on lack of subject matter jurisdiction on the ground that FSS is immune from suit pursuant to the FSIA. *See DC R&R*, 2019 WL 13253806, at *20*, report and recommendation adopted in part by FSS II*, 2022 WL 2438513.

Plaintiff alleges here that FSS submitted another invalid document in support of its claim to foreign sovereign immunity in both the *FSS I* and *FSS II* litigations. Compl. ¶ 83. According to Plaintiff, this claim—which FSS has been advancing since at least 2005—is a RICO predicate

act of obstruction.  Compl. ¶ 88, n.8.  Plaintiff investigated the underlying document and FSS's claim, including by seeking correction from various South Korean authorities, throughout 2017 and early 2018.  Compl. ¶¶ 84-89.  These efforts appear to have been unavailing.

In 2019, Plaintiff's husband initiated a whistleblower action under South Korean law "regarding the slush funds at issue in this case."  Compl. ¶ 92.  Despite arguments by the Hankook Parties and the Korea Exchange that "FSS previously found no illegality regarding such charges," *id.*, FSC is alleged to have "on numerous occasions . . . demanded or requested FSS to investigate Hankook" anew.  Compl. ¶ 93.  According to Plaintiff, FSS has been rejecting "such demand[s] or request[s]" on a regular basis since 2005.  Compl. ¶¶ 97, 94-102.

## LEGAL STANDARD

In general, the Court is obligated to construe a *pro se* complaint liberally and interpret it to raise the "strongest arguments that it suggests."  *Costabile v. New York City Health & Hosps. Corp.*, 951 F.3d 77, 80 (2d Cir. 2020).  Still, federal courts are "courts of limited jurisdiction."  *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005).  "A case is properly dismissed for lack of subject matter jurisdiction under [Federal Rule of Civil Procedure] 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."  *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000); Fed. R. Civ. P. 12(b)(1).

Accordingly, "[w]here, as here, the defendant moves for dismissal under Rule 12(b)(1) . . . as well as on other grounds, the court should consider the Rule 12(b)(1) challenge first since if it must dismiss the complaint for lack of subject matter jurisdiction, the accompanying defenses and objections become moot and do not need to be determined."  *Rhulen Agency, Inc. v. Alabama Ins. Guar. Ass'n*, 896 F.2d 674, 678 (2d Cir. 1990) (quotations omitted).  Likewise, if a defendant moves to dismiss under both Rule 12(b)(5), for insufficient service of process, and Rule

6

12(b)(6), for failure to state a claim, typically the court will consider the jurisdictional issues first. *George v. Pro. Disposables Int'l, Inc.*, 221 F. Supp. 3d 428, 442 (S.D.N.Y. 2016) (quoting *Darden v. DaimlerChrysler N. Am. Holding Corp.*, 191 F. Supp. 2d 382, 386 (S.D.N.Y. 2002)).

Generally, "[w]hen considering a motion to dismiss pursuant to Rule 12(b)(1), the court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff." *Sweet v. Sheahan*, 235 F.3d 80, 83 (2d Cir. 2000); *see also Nat. Res. Def. Council v. Johnson*, 461 F.3d 164, 171 (2d Cir. 2006). But "[a] Rule 12(b)(1) motion challenging subject matter jurisdiction may be either facial or fact-based." *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016). Where a defendant proffers evidence beyond the Complaint that controverts Plaintiff's material allegations, "the district court will need to make findings of fact in aid of its decision as to standing." *Id.* at 57.

In either case, a district court may properly consider public records that may be judicially noticed in ruling on Rule 12 motions. *Williams v. New York City Hous. Auth.*, 816 F. App'x 532, 534 (2d Cir. 2020). In particular, a district court may "take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." *Glob. Network Commc'ns, Inc. v. City of N.Y.*, 458 F.3d 150, 157 (2d Cir. 2006) (internal quotation marks and citation omitted).

With respect to a 12(b)(5) motion challenging the sufficiency of service, "a court must look[] to matters outside the complaint to determine whether it has jurisdiction." *Cassano v. Altshuler*, 186 F. Supp. 3d 318, 320 (S.D.N.Y. 2016). "[T]he plaintiff bears the burden of establishing that service was sufficient*." Khan v. Khan*, 360 Fed. Appx. 202, 203 (2d Cir. 2010) (citation omitted).

Finally, to survive a Rule 12(b)(6) motion to dismiss, a complaint must plead "enough facts

to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678. In connection with the 12(b)(6) challenge, the Court "must accept as true all of the [factual] allegations contained in a complaint," but the Court is not required to accept "legal conclusions," and mere "conclusory statements" are not factual allegations. *Id.*

In all respects, *pro se* parties are entitled to "special solicitude." *Tewari v. Sattler*, No. 23-36-cv, 2024 WL 177445, at *1 (2d Cir. Jan. 17, 2024) (summary order) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474–75 (2d Cir. 2006)). The Court must "liberally construe pleadings and briefs submitted by pro se litigants[.]" *McLeod v. Jewish Guild for the Blind*, 864 F.3d 154, 156 (2d Cir. 2017) (quotation omitted). "[T]he submissions of a *pro se* litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Triestman*, 470 F.3d at 474 (quotation omitted). A district court is not, however, tasked with "scouring obscure bodies of law in order to come up with novel claims on behalf of pro se litigants." *McLeod*, 864 F.3d at 158. Even a *pro se* complaint must give the defendant "fair notice of [the] claim and the grounds upon which it rests." *Boykin v. KeyCorp*, 521 F.3d 202, 214 (2d Cir. 2008); *see also Twombly*, 550 U.S. at 545.

## DISCUSSION

### I. The Court Lacks Jurisdiction to Hear Plaintiff's Claims Against FSS

FSS raises two threshold jurisdictional issues:[4] immunity under the Foreign Sovereign

---

[4] It is not clear on what basis Hankook purports to move under Rule 12(b)(1) for lack of subject matter jurisdiction. Based on the Court's review of the briefing, it seems Hankook must have intended to make its "standing" arguments under Rule 12(b)(1). *See* [ECF No. 72-1] (the "Hankook MTD") at 5. But neither Defendant's "standing" arguments, *id.*; FSS MTD at 22, are jurisdictional. *See Denney v. Deutsche Bank AG*, 443 F.3d 253, 266 (2d Cir. 2006) ("RICO standing is not jurisdictional."); *Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d 352, 359 (2d Cir. 2016) ("[W]hat has been called 'statutory standing' in fact is not a standing issue, but simply a question of whether the particular plaintiff 'has a cause of action under the statute.'" (quoting *Lexmark Int'l, Inc. v. Static Control Components*,

8

Immunities Act ("FSIA"), 28 U.S.C. §§ 1330, 1602 *et seq.*; and lack of personal jurisdiction due to insufficient service of process. FSS MTD at 16-22, 28-29.

### A. Foreign Sovereign Immunity Act

The jurisdictional immunity provided by Section 1604 of the FSIA entails "immunity from both personal jurisdiction and statutory subject matter jurisdiction." *Peterson v. Bank Markazi*, 121 F.4th 983, 994 (2d Cir. 2024), *cert. denied sub nom. Clearstream Banking, S.A. v. Peterson*, 145 S. Ct. 2819 (2025). Where a factual dispute is presented, "it [is] error for [the court] to accept the mere allegations of the complaint as a basis for finding subject matter jurisdiction." *Robinson v. Gov't of Malaysia*, 269 F.3d 133, 141 (2d Cir. 2001) (cleaned up, quotation omitted).

In its prior Order denying FSS's motion to dismiss, the Court noted that the Second Circuit in *Peninsula IV* held that FSS is entitled to foreign sovereign immunity—a holding that would "[n]ormally . . . be dispositive of the very same foreign sovereign immunity question now before the Court." [ECF No. 33] at 7. Nevertheless, this Court noted that Plaintiff's complaint alleged that in 2009, two years after the Second Circuit's decision in *Peninsula IV*, the South Korean government had changed FSS's legal status such that "two major pillars of the Circuit's ultimate finding [on foreign sovereign immunity] . . . [were] no longer factually" applicable. [ECF No. 33] at 7 (citing [ECF No. 1] ¶ 71). At the time, that allegation was essentially undisputed. *See* [ECF No. 21] at 14; [ECF No. 33] at 9 (noting that "the only two affidavits Defendant submits . . . speak almost exclusively to whether service was made properly in this case.").

Plaintiff makes the same allegations in her Amended Complaint. Compl. ¶ 73-77. But Defendant now points to two affidavits that make it clear that Plaintiff's allegations are factually

---

*Inc.*, 572 U.S. 118, 127 (2014)); *Partner Reinsurance Co. Ltd. v. RPM Mortg., Inc.*, 18 Civ. 5831 (PAE), 2020 WL 2904862, at *2 (S.D.N.Y. June 3, 2020) ("While couched as a jurisdictional issue, the type of 'standing' to sue for [contract-related state law claims] at issue in defendants' motion is, if anything, prudential rather than constitutional.").

baseless.  FSS MTD at 15 (citing [ECF No. 61-9] ("Seo Aff.") at ¶¶ 11-19; [ECF No. 36-3] ("Eun Aff.")).  Plaintiff makes the argument that consideration of these affidavits is inappropriate at this stage, Opp. to FSS MTD at 4, 6—an argument that is foreclosed under *Robinson*, 269 F.3d 133—but does not meaningfully dispute the factual issue.

Instead, Plaintiff argues that "even if FSS is taken at its words that it is an organ of the South Korean government[,]" "the FSIA['s] exception for non-commercial torts deprives FSS  of sovereign immunity" with respect to two of her three state law claims.  Opp. to FSS MTD at 5.  This is incorrect.  As Plaintiff recognizes, Opp. to FSS MTD at 5 n.2, the relevant exception does "not apply to . . . any claim arising out of malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights."  28 U.S.C.A. § 1605(a)(5)(B).

Plaintiff's *prima facie* tort claim is premised upon "harm caused by the unresolved claim" under the Indemnity Agreement.  Compl. ¶ 132.  Likewise, Plaintiff's claim for intentional infliction of emotional distress ("IIED") is premised upon FSS's alleged "fraud on courts including this Court" perpetrated to "hamper and/or delay the resolution of this case."  Compl. ¶ 135.  In other words, "as a result of Defendant FSS's continuous tortious interference with the Indemnity Agreement, Plaintiff has suffered damages from the cumulative expenses, including but not limited to legal expenses, and other continuing harm caused by the unresolved claim."  Compl. ¶ 129.  The Court need not credit Plaintiff's use of "creative nomenclature as a semantic ploy to shroud the true essence of [her] theory and obtain jurisdiction over . . . claim[s] that Congress did not intend to be brought against a foreign sovereign."  *Leutwyler v. Off. of Her Majesty Queen Rania Al-Abdullah*, 184 F. Supp. 2d 277, 299 (S.D.N.Y. 2001) (quotation and citation omitted).[5]

---

[5] Wile *pro se* litigants are entitled to special solicitude, the Court is permitted to consider Plaintiff's "litigation history" and need not allow her to use her *pro se* status as a shield for the maintenance of "vexatious, harassing or duplicative lawsuits."  *Safir v. U.S. Lines, Inc.*, 792 F.2d 19, 24 (2d Cir. 1986) (approving sanctions limiting plaintiff's access to courts where he had been litigating the same claims unsuccessfully in various courts "[f]or twenty years.").

Under the FSIA, all of Plaintiff's claims against FSS must be dismissed.

## B. Service of Process

FSS also argues that it is not subject to the Court's jurisdiction because Plaintiff served FSS's then-former lawyer, Mr. Schwartz (now representing FSS in this action), rather than an authorized agent. FSS MTD at 28; *see also* [ECF No. 61-7] ("Park Aff."); [ECF No. 61-8] ("Shwartz Aff."). FSS notes further that service was not even made on Mr. Schwartz, but rather his firm's bookkeeper. FSS MTD at 28; *see also* Park Aff.; Shwartz Aff. This is plainly insufficient under Rule 4 and under 28 U.S.C. § 1608. *See J. & L. Parking Corp. v. United States*, 834 F. Supp. 99, 102 (S.D.N.Y. 1993) ("This court has specifically stated that an attorney does not become a client's agent for service of process simply because she represented the client in an earlier action."), *aff'd sub nom. J & L Parking Corp. v. United States*, 23 F.3d 397 (2d Cir. 1994). Nor, as Plaintiff argues, Opp. to FSS MTD at 18-19, has defendant "waived" this defense. *See* [ECF No. 21] at 13-14 (moving to dismiss for lack of personal jurisdiction based on insufficient service of process); [ECF No. 36-17] at 24 (same).

Accordingly, even if the FSIA did not bar Plaintiff's claims against FSS, those claims would still have to be dismissed, albeit without prejudice.

## II. In Any Event, Plaintiff's Claims Against Both Defendants Are Time-Barred

Were Plaintiff's claims against FSS not barred on jurisdictional grounds, they would nonetheless be barred by time. Moreover, this same incurable defect applies with respect to both Defendants and with respect to all of Plaintiff's claims.

## A. RICO Claims

Plaintiff's RICO claims against both Defendants are subject to a four-year statute of limitations. *Agency Holding Corp. v. Malley-Duff & Assocs. Inc.*, 483 U.S. 143, 156 (1987). The

11

clock starts "when the plaintiff discovers or should have discovered the RICO injury." *421-A Tenants Ass'n, Inc. v. 125 Ct. St. LLC*, 760 F. App'x 44, 49 (2d Cir. 2019) (quotation omitted). Accordingly, "[t]he first step in the statute of limitations analysis is to determine when [Plaintiff] sustained the alleged injury for which [she] seeks redress." *In re Merrill Lynch Ltd. Partnerships Litig.*, 154 F.3d 56, 59 (2d Cir. 1998).  The second step is to "determine when [Plaintiff] discovered or should have discovered the injury and begin the four-year statute of limitations period at that point." *Id.*

Reading the Amended Complaint in the light most favorable to the Plaintiff, and extending the requisite special solicitude due to *pro se* litigants, it appears that the core injury alleged in this case dates back to the late 1990s.  Compl. ¶ 19 ("The genesis of Plaintiff's claim" dates back to "the 1990s.").  In 1998, Plaintiff through Peninsula carried out certain transactions on behalf of Hankook that, "unbeknownst to [Plaintiff] at that material point in time, . . . [were] in violation of laws and regulations of South Korea." Compl. ¶ 24.  The following year, FSS and Hankook formed a RICO enterprise to "cover[ ] up" unlawful actions by Hankook.  Compl. ¶ 47.

Plaintiff's discovery of those alleged injuries, in turn, dates to the early 2000s.  According to her Amended Complaint, Plaintiff discovered that the transactions carried out by Peninsula on behalf of Hankook were unlawful no later than 2002, when Plaintiff and her husband sent Hankook a demand letter under the Indemnity Agreement and, dissatisfied with the offer of indemnification extended, shuttered Peninsula.  Compl. ¶¶ 32-34.  By 2005, Plaintiff was already aware that FSS would assert foreign sovereign immunity in connection with Plaintiff's attempts to litigate the dispute with Hankook, including with respect to any underlying investigation by FSS.  Compl. ¶¶ 57-58.  Further still, also by 2005, Plaintiff was aware that FSS was supporting its allegedly obstructionist claims to foreign sovereign immunity with reference to "letters from the South

Korean Embassy" that Plaintiff contends were issued unlawfully and at the direction of FSS. Compl. ¶¶ 64-66. No later than 2007, Plaintiff's husband learned that FSS would not investigate Hankook. Compl. ¶ 49. That would mean the clock on Plaintiff's RICO claim started nearly twenty years ago, in 2007, and expired nearly fifteen years ago, in 2011.

And at the absolute latest, the clock started in 2018, expiring in 2022: As the Court has previously noted, [ECF No. 33] at 4, Plaintiff brought a civil action on the same facts in 2018. *See FSS II.* To the extent that Plaintiff's "injuries in [this] complaint might as well be cut-and-pasted from the [2018] action," Plaintiff cannot plausibly allege that she did not become aware of them until sometime after June 27, 2019. *Lehman v. Lucom*, 727 F.3d 1326, 1332 (11th Cir. 2013); *see also DLT Res. v. Credit Lyonnais Rouse, Ltd.*, No. 00 Civ. 3560 (HB), 2001 WL 25695, at *4 (S.D.N.Y. Jan. 10, 2001) ("In the November 1992 letter, plaintiff sets forth charges that are the essence of the Complaint at bar" demonstrating "that plaintiff was aware of the conduct alleged in the Complaint . . . almost eight years before the Complaint was filed.").[6] Notably, *FSS II* was filed nine years after Plaintiff alleges that the South Korean government, acting through the South Korean Ministry of Finance and Economy ("MOFAE"), announced in January 2009 its decision "to release FSS from the designation of 'public institution' to secure autonomy and independence of FSS and financial institutions from the government." Compl. ¶ 75; *cf. FSS II*, 1:18-cv-141 (EGS/GMH), [ECF No. 1] (filed January 18, 2018).

Nevertheless, Plaintiff argues that certain injuries alleged in the Amended Complaint did not occur—or at least she was not and could not have become aware of them—until after 2018, thus restarting the clock. [ECF No. 77] (the "Opp. to Hankook MTD") at 10-11; [ECF No. 71]

---

[6] While *Lehman*, 727 F.3d 1326, and *DLT*, 2001 WL 25695, are from the summary judgment stage, a district court on a motion to dismiss may "take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." *Glob. Network*, 458 F.3d at 157.

(the "Opp. to FSS MTD") at 13-14.  The allegations highlighted by Plaintiff include "FSS's refusal of the South Korean Embassy's request that FSS submit evidence to the U.S. Courts in 2018; FSS's refusal to investigate the wrongdoings of Hankook in January 2025; and FSS's refusal to comply with [FSC's] request or demand made in February 2025 that FSS investigate . . . Hankook's failure to make a public disclosure of . . . Hankook's money laundering of the slush funds."  Opp. to Hankook MTD at 10-11 (citations omitted) (citing Compl. ¶¶ 89, 102, 101).  These alleged refusals by FSS—prompted by actions of Plaintiff and her husband based on their long-standing grievances against Hankook, *see* Compl. ¶¶ 89 ("f[i]ling a civil petition"), 102 ("email[ing] Mr. Schwartz, counsel for FSS, proposing a voluntary dismissal of this action"), 92 ("fil[ing] with FSC a whistle-blowing regarding the slush funds at issue in this case" which apparently led, ¶ 93, to the FSC's "request[] or demand" referenced in ¶ 101)—do not restart the clock on the statute of limitations.

Even assuming these refusals constitute legally cognizable "injuries," they are not, contrary to Plaintiff's argument, new and independent injuries that would render her RICO claims timely. *See In re Merrill Lynch Ltd. Partnerships Litig.*, 154 F.3d 56, 59–60 (2d Cir. 1998) (finding that a scheme that was "fraudulent at the outset" did not inflict "new and independent injuries" when participants made "continuing efforts to conceal the initial fraud" and collected fraudulent fees on an annual basis as "part of the alleged scheme").  This is not, in other words, a case where "[a] variety of schemes were employed" across time.  *Bingham v. Zolt*, 66 F.3d 553, 559-61 (2d Cir. 1995).

Instead, Plaintiff has alleged that for nearly thirty years straight, FSS has done two things: 1) refused to investigate allegedly unlawful conduct by Hankook, and 2) refused to submit itself to the jurisdiction of various courts in the United States.  To the extent Plaintiff has been injured by these refusals as recently as this year, her "injur[ies] are not independent of the alleged

14

underlying RICO violation because [they are] caused in material part by"—and indeed are indistinguishable from—the alleged violations that gave rise to this series of litigations at the turn of the century. *421-A Tenants*, 760 F. App'x at 50.

Plaintiff's assertion that she "has been incurring injuries including various legal fees and expenses over time as a result of Defendant[s'] open-ended pattern of racketeering activity," Opp. to FSS MTD at 17 (quotation omitted) (citing Compl. ¶¶ 78-123), does not entitle her to extend the clock indefinitely. *See Bankers Tr. Co. v. Rhoades*, 859 F.2d 1096, 1105 (2d Cir. 1988) (Plaintiff "suffered injury as to each expense when it became obligated to pay that expense, and not at some later date when it actually made the payment."). Plaintiff is not permitted "to restart the limitations clock[,]" *Bingham v. Zolt*, 66 F.3d 553, 560 (2d Cir. 1995) (discussing *Long Island Lighting Co. v. Imo Indus., Inc.*, 6 F.3d 876 (2d Cir.1993)), by repeatedly and unsuccessfully demanding the same relief regarding the same underlying conduct via various channels and in a multitude of fora. In other words, Plaintiff cannot retroactively convert the injury she allegedly suffered decades ago into speculative future damages for which no cause of action has accrued, *Bankers*, 859 F.2d at 1104, by spending thirty years racking up expenses across two hemispheres. *See Zahl v. Kosovsky*, No. 08 Civ. 8308 LTS THK, 2011 WL 779784, at *12 (S.D.N.Y. Mar. 3, 2011) ("The only [allegedly timely] injuries of which Plaintiff complains are the direct results of the enforcement of, and compliance with, prior court orders and decisions, many of which were the products of Plaintiff's own initiation of proceedings in state court."), *aff'd*, 471 F. App'x 34 (2d Cir. 2012).

Accordingly, Plaintiff's RICO claims against both Defendants must be dismissed, with prejudice, as untimely.

15

### B. State law claims

Plaintiff's state law claims against FSS also are time-barred.  An IIED claim is "governed by a one-year statute of limitations" and "accrues on the date of injury."  *Wilson v. Erra*, 94 A.D.3d 756, 942 N.Y.S.2d 127, 129 (2d Dep't 2012).  Likewise, "a cause of action for prima facie tort is governed by a one-year statute of limitations."  *Russek v. Dag Media Inc.*, 47 A.D.3d 457, 458, 851 N.Y.S.2d 399, 400 (1st Dep't 2008).  And "the statute of limitations for tortious interference with contract and with prospective business relations is three years from the date of injury, which is triggered when a plaintiff first sustains damages."  *Bandler v. DeYonker*, 174 A.D.3d 461, 462, 101 N.Y.S.3d 847, 848 (1st Dep't 2019).

As discussed above, assuming she has alleged injuries, Plaintiff sustained them at the turn of the century, and any claims arising from such stale harms are clearly barred.  Nor does the "continuing wrong doctrine" apply to toll the applicable limitations period.  *See Henry v. Bank of Am.*, 147 A.D.3d 599, 601, 48 N.Y.S.3d 67, 70 (1st Dep't 2017) ("The doctrine may only be predicated on continuing unlawful acts and not on the continuing effects of earlier unlawful conduct. The distinction is between a single wrong that has continuing effects and a series of independent, distinct wrongs[.]" (quotation omitted)).

FSS made its positions clear nearly twenty years ago:  It would neither investigate alleged wrongdoing by Hankook in the manner demanded by Plaintiff nor submit to the jurisdiction of American courts.  Compl. ¶¶ 49, 57-58, 64-66.  Plaintiff cannot turn this into a new, independent, and distinct wrong simply by renewing its demand that FSS changes its mind.

Accordingly, Plaintiff's state law claims against FSS must be dismissed.

### CONCLUSION

For the foregoing reasons, Plaintiff's Amended Complaint is DISMISSED with prejudice.

16

The clerk of court is respectfully requested to terminate all pending motions and to close this case.

**Plaintiff is on notice that continuing to file seriatim suits in this Court and elsewhere may subject Plaintiff to sanctions, including monetary penalties and restrictions on Plaintiff's future access to courts.** *See Woodhouse v. Meta Platforms Inc.*, **704 F. Supp. 3d 502, 514 (S.D.N.Y. 2023) (citing *Safir*, 792 F.2d at 24).**

**SO ORDERED.**

Date:  **February 24, 2026**                       _____
            **New York, NY**                            **MARY KAY VYSKOCIL**
                                                                      **United States District Judge**

17